IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL DAGEL,** D/B/A LIFESTYLE MEDIA GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-00663-L** |
| | § | |
| **RESIDENT NEWS, LLC, DIGITAL HOSPITALITY SERVICES, LLC**, **ADAM CHERRY, AND BRIAN JENNER**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss, and Alternatively, Motion to Transfer Venue, filed May 27, 2011. After consideration of the motion, response, reply, briefs, and applicable law, the court **denies** Defendants' Motion to Dismiss, and Alternatively, Motion to Transfer Venue.

## I. Factual and Procedural Background

Plaintiff Michael Dagel, d/b/a Lifestyle Media Group ("Dagel" or "Plaintiff") filed Plaintiff's Original Complaint ("Complaint") on March 31, 2011, in this court against Defendants Resident News, LLC ("Resident News"), Digital Hospitality Services, LLC ("Digital Hospitality"), Adam Cherry ("Cherry"), and Brian Jenner ("Jenner") (collectively "Defendants"), alleging fraud, civil conspiracy, copyright infringement, and breach of contract. Plaintiff asserts diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff seeks damages, including punitive damages, and attorney's fees.

Resident News and Digital Hospitality are limited liability companies that are organized and exist pursuant to the laws of the State of Florida, with their principal places of business located in Coral Springs, Florida. Cherry is a citizen of the State of Florida, residing in Coral Springs, Florida. Jenner is a citizen of the State of Georgia, residing in Georgia. Defendants represent that all locations and offices are in Florida and that their business activities relating to this lawsuit are limited to that area.

Dagel is an individual who does business as Lifestyle Media Group, with his principal place of business in Dallas, Texas. In March of 2009, Defendants contacted Dagel to discuss the purchase of Lifestyle Media Group newsletters by Digital Hospitality. Specifically, Defendants sought out Lifestyle Media Group by phone and e-mail through which they negotiated an ongoing, interactive, contractual relationship that lasted over fourteen months. Plaintiff alleges that Defendants represented to him that they had 100 contracted properties ready to receive his newsletters and promised him a twenty-five percent ownership interest in Digital Hospitality to induce him to provide his newsletters at cost and without customary account fees. During those fourteen months, Defendants allegedly copied Lifestyle Media Group's digital information and used it to create their own Internet websites, www.residentnewsonline.com and www.eapartmentnewsletters.com. Defendants' websites were then used to disperse the copyrighted information to their own customers. Also during that time, Plaintiff continued to provide Defendants with discounted newsletters and suspended $4,000 worth of payments, at the request of the Defendants, in reliance upon Defendants' promise that doing so would defray legal fees associated in fulfilling their end of the contract.

Plaintiff asserts that Defendants' representations were false and that they never intended to fulfill their promise; rather, they planned to steal Dagel's proprietary information, business knowledge, and his collection of digital content for the newsletters. In addition, Resident News and Digital Hospitality allegedly breached their contract with Dagel by failing to pay him for the costs of the June 2010 newsletters, terminating their agreement with him, and divesting him of his interest in Digital Hospitality.

Defendants now move to dismiss this action for lack of personal jurisdiction and improper venue, arguing that they do not possess sufficient minimum contacts with the State of Texas and that none of the bases for proper venue exists here. Defendants also move to dismiss for failure to plead with particularity and failure to state a claim upon which relief can be granted.

## II. Legal Standard

### A. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper, proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be

subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's cause of action arises from, or is directly related to, the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases...will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**B. Venue**

In a civil diversity action, venue is proper in either a judicial district where the defendant resides, or a judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred or in which a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(a)(1)–(2). Venue is also proper in a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. *Id.* § 1391(a)(3).

### C. Transfer of Venue Under Section 1404(a)

With respect to § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In applying § 1404(a), a district court must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Volkswagen I*, 371 F.3d at 203 (citations omitted).

Transfer of venue under § 1404(a) is at the discretion of the court, considering "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)).

A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). A "[p]laintiff's choice of forum is clearly a factor to be considered but in and of itself is neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d at 434. The moving party, however, must "demonstrate[] that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315.

**D. Standard for Dismissal Pursuant to Rule 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (quotations omitted). To satisfy this requirement, a plaintiff must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman v. DCS Commnc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quotations omitted).

In addition, to defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). If a plaintiff's claim meets the Rule 9(b) of the Federal Rules of Civil Procedure higher standard of pleading for fraud, it necessarily complies with Rule 12(b)(6) failure to state a claim upon which relief can be granted.

## III. Analysis

### A. Personal Jurisdiction

Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for want of personal jurisdiction. The first issue for analysis is whether Defendants' contacts with Texas allow the court to exercise personal jurisdiction over it. The court may exercise personal jurisdiction either through general or specific jurisdiction. The court examines each below.

#### 1. Specific Jurisdiction

The court first considers whether it may exercise specific jurisdiction over Defendants. A court may exercise specific personal jurisdiction over a nonresident defendant when its contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros*, 466 U.S. at 414 n.8. The court determines that Plaintiff has met his burden of establishing specific personal jurisdiction over Defendants by presenting a *prima facie* case that personal jurisdiction is proper. *See Ham*, 4 F.3d at 415 (stating that a plaintiff carries the burden of presenting a *prima facie* case of personal jurisdiction); *Stuart*, 772 F.2d at 1192 (same).

Defendants contend that personal jurisdiction is lacking because none of their employees are residents of Texas, their principal place of business is not in Texas, they own no property or bank accounts in Texas, and they negotiated the terms of the disputed agreements outside of Texas. Defendants also argue that they did not perform any of the actions giving rise to Plaintiff's claims in Texas, and thus their contacts with Texas are insufficient to subject them to the jurisdiction of this court.

In response to Defendants' Motion to Dismiss, Dagel asserts that jurisdiction is proper because Defendants deliberately sought out Lifestyle Media Group in Texas by phone and e-mail and negotiated for an ongoing, interactive, contractual relationship that lasted over fourteen months. He emphasizes that Defendants knew Lifestyle Media Group's only office is in Dallas, Texas, and thus were aware that the contract would be performed in Texas.

In addition, Plaintiff contends that creation and delivery of the newsletters was a collaborative effort in which Defendants provided him with a list of customers and advertising content for the newsletters. Plaintiff asserts that Defendants knew that the newsletters were printed and shipped from Texas to the customers and that Defendants made payments to Plaintiff in Texas. Because Texas served as the hub of operations for the contract, Plaintiff contends that Defendants purposefully availed themselves of the privilege of doing business in the Sate of Texas, which allows the court to exercise jurisdiction over Defendants in connection with each of Plaintiff's contractual claims.

Dagel's causes of action for fraud, conspiracy, and copyright infringement arise out of, and are directly related to, Defendants' contacts with Texas via phone, e-mail, and the Internet, thereby rendering consideration of specific jurisdiction appropriate. *See generally Bearry v. Beech Aircraft*,

818 F.2d 370, 374 (5th Cir. 1987) (exercise of specific jurisdiction appropriate where cause of action arises out of nonresident defendant's contacts with forum state). Moreover, even a single contact can support specific jurisdiction. *See American Eyewear, Inc. v. Peepers Sunglasses*, 106 F. Supp. 2d 895, 901 (N.D. Tex. 2000) (citing *Bearry*, 818 F.2d at 374).

Specifically, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities," as a state has a substantial interest in making a convenient forum available to its residents for redressing injuries by out-of-state actors who have purposely availed themselves on that state. *Burger King*, 471 U.S. at 473 (citation omitted). Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum state, as Defendants argue. *Id*. at 476. When a nonresident defendant takes "purposeful and affirmative action, which results in foreseeable business activity in the forum state, such action is considered a minimum contact for jurisdictional purposes." *See Mississippi Interstate Express, Inc., v. Transpo, Inc*., 681 F.2d 1003, 1007 (5th Cir. 1982).

Defendants deliberately reached out to Plaintiff by telephone and e-mail with the goal of causing business activity with Plaintiff. Defendants knew that Plaintiff and the operations for the agreement were located completely in Texas. They collaborated on the product being produced and shipped from Texas, as well as made payments to Lifestyle Media Group in Texas. The hub of the business relationship between Plaintiff and Defendants as well as the material part of their obligations took place in Texas. Plaintiff and Defendants' business relations continued for fourteen months.

Plaintiff further argues that Defendants made numerous promises and representations, including that they would give Dagel a twenty-five percent ownership interest, to incite Plaintiff to provide newsletters at cost. Pursuant to the agreement, Plaintiff provided newsletters at cost to Defendants' customers each month, to the detriment of Lifestyle Media Group. Plaintiff argues that Defendants intended to induce Plaintiff into the contract with their false promises. For these reasons, Plaintiff contends that Defendants' intentional tortious conduct against his Texas company should have caused them to reasonably anticipate being haled into court in Texas for fraud and conspiracy claims.

Defendants' actual communication with Plaintiff gives rise to intentional fraud and conspiracy claims, which in and of itself constitutes purposeful availment. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). Moreover, intentional acts need not actually occur in the forum state to constitute specific jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 791 (1984) (holding that the defendants' acts outside of the forum state, which caused injury in the forum state, subjected them to personal jurisdiction). For these reasons, the court determines that Defendants purposefully availed themselves of the privileges and protections of conducting activities within Texas, and it was reasonably foreseeable for Defendants to be haled into Texas courts. These factors weigh heavily in favor of the exercise of jurisdiction.

Finally, Plaintiff contends that Defendants created multiple websites to advertise, solicit business, and carry out their business throughout the United States and in Texas. Plaintiff argues these websites commit ongoing copyright infringement against Lifestyle Media Group's copyrighted

Article Database. Plaintiff also argues that the websites are interactive and transmit files over the Internet and therefore this court has personal jurisdiction over Defendants.

Because the majority of Defendants' contacts that gave rise to Dagel's copyright infringement claims were made over the www.residentnewsonline.com and www.eapartmentnewsletters.com websites, the court must examine the facts against the backdrop of the Fifth Circuit's standard for assessing personal jurisdiction in Internet cases.

In *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999), the court adopted a standard for personal jurisdiction from *Zippo Manufacturing Company v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The *Zippo* decision instructs courts to look to the "nature and quality of commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124; *see also Mink*, 190 F.3d at 336. This test examines a defendant's Internet activities in relation to a spectrum of three areas. *Mink*, 190 F.3d at 336. At one end of the spectrum are defendants who conduct their businesses over the Internet, entering into contracts with residents of other states involving the "knowing and repeated" transmission of computer files over the Internet. *Id*. "Passive" websites are at the other end of the scale, doing nothing more than providing information and advertising to those who access the site. *Id.*; *Fix My PC, LLC v. N.F.N. Assocs., Inc.*, 48 F. Supp. 2d 640, 643 (N.D. Tex. 1999). Passive websites, on their own, do not provide for personal jurisdiction over the owner of the site. *Mink*, 190 F.3d at 336; *Fix My PC*, 48 F. Supp. 2d at 643. In the middle of the spectrum are interactive websites, which allow Internet users to communicate and exchange information with the organization sponsoring the site. *Mink*, 190 F.3d at 336; *Fix My PC*, 48 F. Supp. 2d at 643. In this "middle ground," the exercise of jurisdiction depends upon "the

level of interactivity and commercial nature of the exchange of information" conducted on the defendant's website. *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124).

Defendants' websites are "interactive" under *Mink*. Users of www.residentnewsonline.com and www.eapartmentnewsletters.com interact with the websites by signing up with Resident News, logging into the websites with a secure password, creating their own monthly newsletters, and submitting the newsletters for processing. Finally, these users make payments to Resident News by entering a credit card number into the billing process. Pl.'s Resp. 20; Pl.'s App. 10-12. The websites made the allegedly infringing newsletters available to all customers and potential customers, including residents of Texas. Further, Defendants used the websites to communicate and interact with their customers in Texas. *See* Pl.'s Resp. 25; Pl.'s App. 11-12. Because the nature of Defendants' websites are interactive and involve the commercial exchange of information and payments, the court has personal jurisdiction over Plaintiff's copyright claim against Defendants' websites.

Having reviewed this legal authority, the court determines that Plaintiff has met its burden of establishing personal jurisdiction over Defendants by presenting a *prima facie* case that specific jurisdiction is proper. *See Ham*, 4 F.3d at 415; *Stuart*, 772 F.2d at 1192.

**2. General Jurisdiction**

In light of its determination above concerning specific jurisdiction, the court need not address the issue of general jurisdiction. The court next turns to the issue of venue.

**B. Venue**

Defendants move to dismiss for lack of proper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. In so doing, the burden is on Defendants to demonstrate affirmatively that

Plaintiffs filed this lawsuit in an improper venue. *International Truck & Engine Corp. v. Quintana*, 259 F.Supp. 2d 553, 558 (N.D. Tex. 2003) (Lindsay, J.). Venue is proper in the Northern District of Texas, when "a substantial part of the events or omissions giving rise to the claim occurred" in the district. 28 U.S.C. § 1391(b)(2). Defendants argue that venue is improper because a substantial part of the events or omissions giving rise to the claim occurred in Florida, not Texas. They argue that their location is primarily in Florida and that they conducted all negotiations from Florida.

As discussed above, the business relations between Defendants and Plaintiff were centered and performed in Texas. Further, a substantial part of the events giving rise to Plaintiff's claims occurred in and were directed towards this district. Plaintiff has alleged that Defendants' Internet websites were accessible in the Northern District of Texas. Moreover, Plaintiff, who is doing business in the Northern District of Texas, was allegedly injured in this district. Defendants fail to show that a substantial part of the events or omissions giving rise to Plaintiff's claim did not occur in the Northern District of Texas. Accordingly, Defendants have not met their burden of demonstrating *affirmatively* that the Northern District of Texas is an improper venue for Plaintiff's causes of action. *See id*. For these reasons, the court determines that venue is proper in the Northern District of Texas. Accordingly, Defendant's motion to dismiss for improper venue is denied.

**C. Transfer of Venue Under Section 1404(a)**

Alternatively, Defendants assert that a venue transfer is warranted for the convenience of the parties and witnesses, and in the interest of justice, under 28 U.S.C. § 1404(a). There are a "number of private and public interest factors, none of which [is] given dispositive weight," that the court must consider in making its determination. *Volkswagen I*, 371 F.3d at 203.

With respect to the private factors, Defendants offer conclusory statements that witnesses are located in Florida, yet they fail to provide any evidence to support their assertions. Defendants do not identify specific witnesses and fail to explain how these witnesses are relevant to the case. Defendants also argue that they and their potential witnesses will be inconvenienced if the case is not transferred. The court considers the convenience of the parties here a neutral factor because one party and its potential willing witnesses will be inconvenienced regardless of the venue chosen. In addition, a plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors *strongly* favors the moving party. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)) (emphasis added). Because Defendants fail to identify actual witnesses or the role they may play in the case; rather they merely make conclusory statements regarding their inconvenience, Defendants have failed to "demonstrate[] that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315.

With respect to the public factors, Defendants do not raise any specific problems or difficulties arising from keeping venue in this district. The parties have not presented any arguments over the administrative difficulties flowing from court congestion, and they have not addressed whether one forum is more familiar with the governing law or whether any conflict of laws is present. Similarly, the parties have not addressed the local interest. Consequently, these factors are either inapplicable or neutral.

In sum, one of the private factors is neutral while the remaining three are neutral or inapplicable. The public factors are neutral or inapplicable. Defendants have failed to show that the Southern District of Florida is clearly more convenient than the venue chosen by Plaintiff and

accordingly have failed to meet their burden on this motion. This court therefore concludes that, in the interest of justice, the forum for this action should remain in the Northern District of Texas. Defendants have not presented sufficient grounds to justify disturbing Plaintiff's choice of venue. Defendants' motion to transfer venue will be denied.

**D. Rule 9(b)'s Particularity Requirement**

Defendants argue that Dagel fails to plead fraud and conspiracy claims with the particularity required by Rule 9(b). Plaintiff responds that he pleaded fraud with the required particularity, referencing multiple claims from his Original Complaint, and that the allegations are more than sufficient to put the Defendants on notice of the bases for his claims. Defendants reply that Plaintiff fails to comply with the requirements of Rule 9(b), as Dagel's pleadings are general and contain loose allegations and unspecific representations.

During the course of negotiating the purchase price for the newsletters and the continuing business relationship at issue, Plaintiff alleges that, in March of 2009, Defendants represented that they had 100 multi-family residential properties under contract to receive newsletters. Pl.'s Compl. ¶¶ 12-13, 15. Plaintiff argues that he relied on Defendants' statements and agreed to discount the price of his newsletters by fifteen percent, waive the customary new account fee of $35 per property, and provide newsletters to Defendants' customers at no cost. *Id*. at ¶¶ 13-14. Plaintiff further alleges that in late December of 2009, Defendants stated they would provide a twenty-five percent interest in Digital Hospitality to Plaintiff, on the condition that he continue to provide e-newsletters at cost. *Id*. at ¶ 18. Plaintiff allegedly relied upon Defendants' promises by continuing to provide the newsletters at cost, to his detriment. *Id*. at ¶ 59. Plaintiff contends that Defendants never

intended to honor their promise to grant him twenty-five percent ownership interest in Digital Hospitality. *Id.* at ¶ 57.

Further Plaintiff alleges that on or about June 21, 2010, Defendants admitted they were working on their own system for creation of newsletters and represented that it was only a "contingency plan" in case Plaintiff ever stopped providing newsletters. *Id.* at ¶¶ 47-48. Defendants allegedly continued to use Plaintiff's newsletter content on their websites without authorization or approval after the termination of their business relationship. *Id.* at ¶ 55. In addition, Plaintiff's pleadings specify which representations were made via telephone or e-mail.

These allegations specify the contents of the allegedly fraudulent statements, the dates in which the statements were made, identify the speakers, and identify where the statements were made. Plaintiff alleges that Defendants did not intend to fulfill their promises; rather, they planned to take advantage of their relationship with Dagel and steal his proprietary information, business knowledge, and collection of digital content for apartment complex newsletters. *Id.* at ¶ 1.

Having reviewed the allegations in the Complaint, the court rejects Defendants' argument that Plaintiff's fraud claims should be dismissed for failure to plead with particularity, as required under Rule 9(b) of the Federal Rules of Civil Procedure. The court is satisfied that Plaintiff sufficiently describes the alleged fraud with "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman*, 14 F.3d at 1068. The court determines that Plaintiff's allegations are specific enough to comply with Rule 9(b). The court finds that Plaintiff has therefore stated a claim upon which relief can be granted for fraud and that a more definite statement is

unnecessary. Development of additional facts may be obtained through discovery. Accordingly, Defendants' motion to dismiss on these grounds will be denied.

### E. Conspiracy Claim

Defendants move to dismiss Plaintiff's conspiracy claim, which is based on the underlying allegations of fraud. Because this claim is derivative of Plaintiff's fraud claims, Defendants assert that it should likewise be dismissed for failure to plead with particularity under Rule 9(b). The court has already determined that Plaintiff may proceed on his fraud claim. Accordingly, the court will not dismiss Plaintiff's conspiracy claim on such grounds.

## IV. Conclusion

For the foregoing reasons, the court determines that Defendants do have sufficient contacts with the State of Texas to establish specific jurisdiction and that venue is proper. In addition, the court determines that Defendants have failed to meet their burden of demonstrating that a transfer of venue is clearly more convenient for the parties and witnesses and in the interest of justice. Accordingly, the court **denies** Defendants' Motion to Dismiss, and Alternatively, Motion to Transfer Venue.

**It is so ordered** this 10th day of August, 2011.

Sam A. Lindsay
United States District Judge