IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL DAGEL,** d/b/a | § | |
| **LIFESTYLE MEDIA GROUP**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-663-L** |
| | § | |
| **RESIDENT NEWS, LLC, DIGITAL** | § | |
| **HOSPITALITY SERVICES, LLC**, | § | |
| **ADAM CHERRY,** and **KIM CHERRY**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Opposed Motion to Dismiss for Misjoinder, filed April 4, 2012. After carefully reviewing the motion, briefing, pleadings, and applicable law, the court **denies** Defendant's Opposed Motion to Dismiss for Misjoinder.

## I.    Introduction

Plaintiff Michael Dagel, d/b/a Lifestyle Media Group ("Dagel" or "Plaintiff") brought this action on March 31, 2011, against Defendants Resident News, LLC ("Resident News"), Digital Hospitality Services, LLC ("Digital Hospitality"), Adam Cherry, and Brian Jenner ("Jenner") based on diversity jurisdiction. Jenner was dismissed from the action on September 28, 2011. On March 29, 2012, Dagel filed a Second Amended Complaint ("Complaint") to add Kim Cherry as a defendant. Dagel asserts claims against all Defendants for fraud, civil conspiracy, copyright infringement, and breach of contract.[1]

---

[1] Kim Cherry and the other Defendants are collectively referred to herein as "Defendants" unless otherwise noted.

**Memorandum Opinion and Order – Page 1**

Dagel does business as Lifestyle Media Group ("LMG"), located in Dallas, Texas. Through LMG, Dagel sells monthly newsletter articles to customers who purchase the articles for use in newsletters distributed to mult-family residential complexes. Through its website, LMG's customers are able to access, select, and purchase from an Articles Database, articles written by Dagel. Dagel asserts that he registered with the United States Copyright Office the Articles Database, and that the copyright has an effective date of October 12, 2012. Attached to Dagel's Complaint is a copy of a Certificate of Registration for the Articles Database with an October 12, 2012 effective date of registration.

In March 2009, Adam Cherry contacted Dagel to discuss Digital Hospitality's interest in purchasing LMG newsletters that would be used as a medium for distributing advertising to apartment complex residents. Adam Cherry also proposed that LMG provide the newsletters at a volume discount rate in exchange for a prospective joint venture between LMG and Digital Hospitality, which, according to Adam Cherry, had 100 multi-family residential properties under contract to receive newsletters. Dagel acknowledges that the parties did not immediately execute a formal written contract but states that, based on Adam Cherry's representation, they reached a verbal agreement in April 2009, whereby LMG agreed to create apartment complex newsletters for the month of May 2009 for three customers of Digital Hospitality and Resident News at a discounted price. Dagel agreed to discount the price of the newsletters by 15 percent and waived LMG's customary new account fee of $35 per property. He also agreed to waive the $24.95 charge per property for e-newsletters and provide e-newsletters to each of Digital Hospitality's customers at no cost. Thereafter, LMG set up accounts for these three customers and allowed them to access the Articles Database via LMG's website.

**Memorandum Opinion and Order – Page 2**

After the customers selected content from the Articles Database and submitted the content to Dagel for inclusion in their newsletters, LMG created drafts of newsletters and provided the drafts to Digital Hospitality's and Resident News's customers for final review and approval.  In connection with the May 2009 newsletters, Digital Hospitality and Resident News also provided advertising content in digital format for inclusion in the May 2009 newsletters.  After receiving approval, LMG arranged to have the newsletters printed and shipped to Digital Hospitality and Resident News. Dagel provided invoices for the May 2009 work to Digital Hospitality, and the invoices were paid.

From May 2009 to December 2009, Dagel, Adam Cherry, and Jenner continued to discuss the terms of a prospective joint venture and exchanged drafts of proposed agreements.  During this time, LMG continued to provide newsletters and related services to Digital Hospitality's customers at discounted rates.  Between December 2009 and January 2010, Jenner proposed that LMG provide newsletters at cost in exchange for Dagel receiving a 25 percent interest in Resident News.  Adam Cherry also contacted Dagel and requested an additional $4,000 discount to defray legal costs associated with finalizing a written agreement between Dagel and Defendants that contained the terms of their new agreement.  Based on Jenner's and Adam Cherry's verbal assurances regarding Resident News's profitability, Dagel agreed to suspend $4,000 of the amounts then due from Defendants.  He also agreed to begin providing newsletters at cost in exchange for a 25% interest in Resident News.

Dagel contends that Jenner promised to finalize the written agreement and documentation no later than March 31, 2010; however, the parties continued to exchange drafts after March 31, 2010, and Dagel continued to insist that he be provided with copies of Resident News's financial records so that he could confirm the profitability of the company.  From January 2010 to June 2010,

**Memorandum Opinion and Order – Page 3**

Dagel contends that LMG provided apartment newsletters to Defendants at cost in reliance on their promises and representations.  On May 21, 2010, the parties agreed to the form of an operating agreement, and the following day, Adam Cherry forwarded financial records to Dagel for review. Dagel, however, contends that key information was missing from the records provided.

A final written agreement was never executed by the parties.  It appears that a number of events led to the unraveling of the parties' relationship before a contract could be executed.  The first sign of trouble, according to Dagel, arose when he noticed that Adam Cherry and a software developer from India had accessed the LMG website on or about April 21, 2010.  Dagel e-mailed Adam Cherry to find out why he was viewing LMG's site with a software developer but received no response.  Subsequently, on May 24, 2010, Adam Cherry asked Dagel to identify the company that LMG used for search engine optimization.  Dagel declined to provide this information because he considered it to be confidential.  On June 2, 2010, Dagel learned from a third party that Adam Cherry was working with programmers in India to develop a system for Resident News to create its own newsletters.

Dagel contends that Defendants did not timely pay LMG for costs it incurred in May 2010 in connection with its production of June 2010 newsletters, and that on June 15, 2010, Dagel informed Adam Cherry that LMG would not produce July 2010 newsletters until Defendants paid the outstanding balance of $11,586.  On June 26, 2010, Defendants sent LMG a letter terminating the parties' agreement regarding Defendants' purchase of newsletters from LMG and Dagel's acquiring an interest in Resident News.  On July 16, 2010, Defendants made a partial payment of $6,000 toward the amount due for the June 2010 newsletters, but the remaining balance is still outstanding.

**Memorandum Opinion and Order – Page 4**

Dagel further asserts that after Defendants stopped purchasing newsletters from LMG, he discovered that Defendants had copied and used LMG's library of content in connection with their own newsletters.  Dagel alleges that as early as November 27, 2009, without his consent or knowledge, Adam Cherry enlisted his wife Kim Cherry, his brother Andy Cherry, and others to copy LMG's library of articles, and that these articles were added to the Resident News database, uploaded to the company's website and other websites, and used by Resident News's customers. According to Dagel, the articles copied from LMG's website were used in thousands of apartment newsletters for numerous apartment complexes throughout the United States, and from July 2010 until the time this lawsuit was filed on March 31, 2011, Defendants continued to use LMG's content without authorization or approval in violation of LMG's copyright.

Dagel asserts that Defendants' representations were false and that they never intended to fulfill their promise but instead planned to steal Dagel's proprietary information, business knowledge, and his collection of digital content for the newsletters.  In addition, Dagel contends that Resident News and Digital Hospitality breached their contract with LMG by failing to pay for the costs of the June 2010 newsletters, terminating the parties' agreement, and divesting him of his interest in Resident News.

On May 27, 2011, Defendants Adam Cherry, Digital Hospitality, and Resident News filed a motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, seeking dismissal of Plaintiff's fraud and conspiracy claims for failure to plead with particularity under Rule 9(b).  Defendants also contend that Plaintiff failed to state a claim for conspiracy under Texas law upon which relief could be granted. Before the court ruled on Defendants' motion, Plaintiff filed a First Amended Complaint, to which  the copyright registration was attached as

Exhibit A.  By order dated August 10, 2011, the court denied Defendants' motion to dismiss.  For reasons unknown, Defendants did not file an answer to the First Amended Complaint until October 27, 2011,[2] and Plaintiff has yet to file an answer to the affirmative defenses and counterclaims asserted in Defendants' Answer and Affirmative Defenses and Counterclaim to Plaintiff's First Amended Complaint.

Subsequently on February 15, 2012, Plaintiff moved for leave to file a second amended complaint for the sole purpose of adding Kim Cherry as a party.  The court granted the motion, and Plaintiff filed an amended pleading on March 29, 2012.  Other than adding Kim Cherry as a party, the claims asserted are the same, except for paragraphs 61 and 66 of the Second Amended Complaint, which include factual allegations concerning Adam Cherry that were not included in Plaintiff's prior pleading.

On April 4, 2012, Adam and Kim Cherry filed Defendant's Opposed Motion to Dismiss for Misjoinder, seeking dismissal of all claims against them individually.  Although entitled a motion to dismiss for misjoinder, Adam and Kim Cherry also contend in their motion that Plaintiff has failed to plead facts to support a claim for copyright infringement.  The court therefore construes their motion under Rules 21 and Rule 12(b)(6).

## II.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517

---

[2] Defendants filed two answers within a 10 minute time frame on October 27, 2011, to Plaintiff's First Amended Complaint.  Both appear to be identical except that one version is 34 pages in length, and the other version is 35 pages in length.

F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**Memorandum Opinion and Order – Page 7**

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## III.    Analysis

### A.    Whether Dismissal is Proper for Misjoinder

The Cherrys seek dismissal of Plaintiff's claims against them on the grounds that Plaintiff's claims are based on business conducted with Digital Hospitality d/b/a Resident News, and Plaintiff's claims originate from the contractual agreement between Plaintiff and Digital Hospitality, not the Cherrys. The Cherrys further contend that Digital Hospitality d/b/a Resident News is a limited liability company of which the Cherrys are agents, employees, and members, and all actions by them were taken in their capacity as members, not as individuals. The Cherrys do not cite to any legal authority to support their position. Plaintiff counters that the Cherrys can be held personally and

vicariously liable as agents of Digital Hospitality and Resident News and for their conduct in personally copying LMG's copyrighted articles.[3]

While the court can add or drop a party to the case or sever claims under Rule 21 of the Federal Rules of Civil Procedure, misjoinder of parties is not a ground for dismissing an action or claims. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010); *see* Fed. R. Civ. P. 21. Accordingly, Plaintiff's claims against the Cherrys cannot be dismissed under Rule 21.

Moreover, although LLC members generally cannot be held individually liable for the debts of the LLC, Texas courts have applied to LLCs the same state law principles for piercing the corporate veil that they have applied to corporations. *See In re JNS Aviation, LLC*, 376 B.R. 500, 526 (Bankr. N.D. Tex. 2007), *amended in part by* 2008 WL 686159 (Bankr. N.D. Tex. Mar. 7, 2008), *aff'd ,* 395 F. App'x 127 (5th Cir. 2010); *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.   San Antonio, no pet.); *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.   Houston [1st Dist.], 2007, pet. denied); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop.*

---

[3] Plaintiff also contends that the Cherrys' motion to dismiss should be denied because the court previously ruled that LMG has stated valid claims for fraud and conspiracy against Defendants. The court did previously deny a Rule 12(b)(6) motion by Defendants; however, as already noted, Plaintiff's Second Amended Complaint contained new factual allegations regarding Adam Cherry's role in enlisting the alleged infringing activity. Pl.'s Compl. ¶ 66. The Complaint also contains new allegations regarding Adam Cherry's role in instructing Jenner to send an e-mail to Dagel, advising that Resident News had made alternative arrangements to obtain July 2010 newsletters. Pl.'s Compl. ¶ 61. Thus, while Adam Cherry would not normally be permitted to assert a second motion to dismiss if Plaintiff's amended pleading had only added Kim Cherry as an additional party, the court determines that, based on these new factual allegations, Adam Cherry is entitled to move for misjoinder based on his alleged role and individual liability. Plaintiff's amended pleading also expanded the time frame and commencement date for the alleged infringing activity from July 2010 to November 27, 2009. The court therefore determines that Adam Cherry is also entitled to seek dismissal of Plaintiff's copyright infringement claim under Rule 12(b)(6) based on Plaintiff's new pleadings pertaining to infringement. As a newly added party, Kim Cherry is entitled to seek dismissal of any and all claims asserted against her, regardless of whether the court previously denied the motion to dismiss brought by the other defendants. The court further notes that its prior memorandum opinion and order dealt only with whether Plaintiff had pled with particularity his claims for fraud and conspiracy and did not address whether Plaintiff had stated a claim for copyright infringement for purposes of Rule 12(b)(6).

*Owners' Ass'n*, 77 S.W.3d 487, 499 (Tex. App.   Texarkana 2002, pet. denied).   In an action in which the plaintiff is seeking to hold an agent individually liable for his tortious or fraudulent acts, the corporate veil is not required to be pierced, because an "agent is personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment." *Sanchez*, 274 S.W.3d at 712.

Additionally, in copyright infringement actions, an individual, including a corporate officer, is jointly and severally liable for infringement if the individual personally participates in the infringing activity or "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Broadcast Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1994 WL 144812, at *2 (5th Cir. Apr. 8, 1994) (unpublished) (citing *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992) ("'An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for the infringement.'") (citation omitted)); *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1259 (S.D. Tex. 1989), *aff'd*, 915 F.2d 1567 (5th Cir. 1990).

Here, Plaintiff has asserted claims against Adam and Kim Cherry for fraud, conspiracy, and copyright infringement.   Plaintiff is therefore not required to pierce the veil of the LLC at issue in this case.   *See Sanchez*, 274 S.W.3d at 712.   As agents of Digital Hospitality d/b/a Resident News, the Cherrys can be held personally liable for their own fraudulent or tortious acts, even if they were acting in the scope of their employment.   *Id.*   The Cherrys can also be held personally liable for copyright infringement if they personally participated in the infringing activity or had the right and ability to supervise the infringing activity and also had a direct financial interest in the activities.   *See*

*Broadcast Music, Inc. v. Hobi, Inc.*, 1994 WL 144812, at *2. Plaintiff alleges in his Complaint that Adam Cherry directed or enlisted Kim Cherry, Andy Cherry, and others to copy LMG's library of articles for use by Resident News's customers. Plaintiff further alleges that Adam and Kim Cherry are owners and managers of Digital Hospitality and Resident News, and the Cherrys admit that they are members in the companies. As such, both have a financial interest in the companies and are in a position to supervise the activities of the companies' employees. Accordingly, both can be held personally liable for the alleged infringing activities for their role as managers and members of Digital Hospitality and Resident News. Kim Cherry can also be held liable for her personal participation, if any, in the alleged infringing activity. As a result, Adam and Kim Cherry are not entitled to dismissal of Plaintiff's claims against them based on misjoinder.

**B.      Whether Dagel has Stated a Claim for Copyright Infringement**

Adam and Kim Cherry argue that Plaintiff's copyright infringement claim against them fails for a number of reasons that the court addresses separately.

**1.      Improper Use or Copying**

The Cherrys first contend that there is no evidence of unauthorized usage of Plaintiff's materials, and Plaintiff has not alleged any such improper usage. Instead, according to the Cherrys, Plaintiff has merely asserted improper use or copying of Plaintiff's materials by employees of Resident News based on the statements of former disgruntled Resident News employees. The Cherrys submitted the declarations of Sheila Cherry, Adam Cherry, and Kim Cherry to counter this allegation by Plaintiff. Even viewed in the light most favorable to Plaintiff, the Cherrys maintain that Plaintiff's allegations regarding copying by Resident News employees are not sufficient to state

a claim for copyright infringement generally or against them personally. The Cherrys cite no authority to support their arguments in this regard.

The court's function at this juncture is not to weigh evidence or credibility for purposes of determining the likelihood of Plaintiff's success. *United States ex rel. Riley*, 355 F.3d at 376. Rather, in ruling on a Rule 12(b)(6) motion, the court determines only whether the Plaintiff has pleaded a legally cognizable claim, and in doing so, the court considers only the sufficiency of Plaintiff's pleadings. Thus, the Cherrys' argument that Plaintiff's claim is based on the statements of disgruntled former employees is not a proper ground for seeking dismissal under Rule 12(b)(6), as these are matters outside the pleadings and cannot be considered by the court. *Spivey*, 197 F.3d at 774. For the same reason, the court cannot consider the declarations submitted in an attempt to rebut the factual allegations in Plaintiff's complaint.

Regarding the sufficiency of his pleadings, Plaintiff contends, and the court agrees, that he has alleged sufficient facts to support a claim for copyright infringement. To state a claim for copyright infringement, a claimant must allege (1) ownership of a valid copyright; and (2) copying of the constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Section 410 of Title 17 of the United States Code applicable to copyrights provides that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

Plaintiff has alleged and attached to his pleadings a certificate of registration for the materials at issue that he allegedly authored. The effective date of the registration is October 12, 2010. According to the Complaint, the Cherrys were first provided access to the articles on LMG's website

**Memorandum Opinion and Order – Page 12**

and Article Database in November 2009, but they were only authorized to access and copy those items selected and purchased from LMG. The court therefore determines that Plaintiff has pled sufficient facts regarding ownership of a valid copyright.

Regarding the second element, Plaintiff alleges that while Defendants were given permission to access the LMG website and articles, and purchased certain articles that they selected for inclusion in Resident News newsletters, Plaintiff contends that Kim Cherry and others also copied thousands of articles from November 2009 to March 2011 from LMG's website without Plaintiff's knowledge, consent, authorization, or payment. The court therefore concludes that Plaintiff has alleged sufficient facts regarding unauthorized copying, and the Cherrys are not entitled to dismissal of Plaintiff's copyright infringement claim on this ground. *See* 17 U.S.C. § 410(c).

### 2. Notice and Damages

The Cherrys argue, again without any reference to legal authority, that Plaintiff was required to but failed to allege that any form of notice was given or loss suffered. It is not clear from this statement whether the Cherrys contend that Plaintiff was required to provide notice of the material's protected status before they were allowed access or that Plaintiff was required to provide notice of the copyright infringement claim before filing suit. The court is not aware of any such requirements, and for the reasons stated above, concludes that Plaintiff has stated a valid claim for copyright infringement. The court further concludes that, contrary to the Cherrys' assertion, Plaintiff has alleged that he and LMG has suffered damages for various amounts as a result of the Cherrys' alleged conduct.

**Memorandum Opinion and Order – Page 13**

### 3.    Effect of Copyright Registration Date

The Cherrys further contend that Plaintiff's copyright infringement claim fails, as Plaintiff did not apply for copyright protection for his articles until November 2010, several months after the business between the parties concluded and after Defendants and their customers used Plaintiff's website or articles.    Plaintiff responds that the effective date of the copyright registration is irrelevant, that a valid claim has been stated, and that applicable law, a copyright comes into existence and arises at the moment of creation.    For support, he cites 17 U.S.C. § 302(a) and *Rodrigue v. Rodrigue*, 218 F.3d 432, 436 (5th Cir. 2000), *cert. denied*, 532 U.S. 905 (2001).

The registration date affects a plaintiff's standing to bring an action based on a copyright infringement claim in that a copyright must be registered before filing suit.    The court is not aware of any reason why the timing of a copyright registration would affect the viability of a plaintiff's copyright infringement claim, and the Cherrys do not cite any authority to support their argument in this regard.    Moreover, as noted above, Plaintiff alleges that he obtained the certificate of registration within five years after the first alleged publication of the materials to Defendants in November 2009.    The court therefore determines that this argument is without merit and not a basis for dismissal under Rule 12(b)(6).

### 4.    Evidence Regarding Settlement and Apology

The Cherrys finally argue that they are entitled to dismissal of Plaintiff's copyright infringement claim because in a July 1, 2010 e-mail, Dagel apologized and asked for forgiveness and allegedly offered to release any claims between the parties.    The Cherrys submitted the e-mail as an exhibit to their motion.    Plaintiff counters that the Cherrys fail to offer any reason why this e-mail

is relevant to whether a valid claim for copyright infringement has been pled.  Plaintiff also contends that the Cherrys take the e-mail out of context.

As previously stated, the court declines to consider any extrinsic evidence in ruling on the Cherrys' motion to dismiss under Rule 12(b)(6).  Moreover, it is questionable whether any such evidence would be admissible for the purpose presented, even if the court were to convert the motion to dismiss to a summary judgment.  *See* Fed. R. Evid. 408.  Accordingly, the court determines that dismissal of Plaintiff's copyright claim is not warranted on this ground.

**IV.     Conclusion**

For the reasons explained, the court **denies** Defendant's Opposed Motion to Dismiss for Misjoinder.

**It is so ordered** this 8th day of June, 2012.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 15**